472

## CIRCUIT COURT OF WARREN COUNTY

Town of Front Royal

v.

David T. Allan

December 2, 1999

Case No. CR99-383

BY JUDGE DENNIS L. HUPP

This case was tried before the bench on November 16, 1999. The defendant raised several legal issues, and I took the case under advisement to resolve those issues and to decide the ultimate issue in the case, that being the guilt or innocence of the defendant. I will refer to the Town of Front Royal as "Town," to the defendant as "Allan," and to his business as "Breaktime."

Allan operates Breaktime Billiards which is owned by Scotty Group, Ltd., a corporation with two stockholders and directors, those being David T. Allan and Edwin B. Allan. Breaktime Billiards is a business establishment located in Front Royal offering billiards and darts and serving food and drink, including alcoholic beverages. It is operated for profit. As of July 1, 1999, Breaktime purportedly became a private club rather than a business open to the general public. Breaktime developed "club rules" which include payment of membership fees in the amount of $2.00 per year for individuals and $3.00 per year for families. Members are permitted to bring guests onto the premises, limited to no more than three guests per member per occasion. They are requested to refrain from bringing the same guest more than three times per year.

The Front Royal Town Code § 110-24 requires that public pool rooms and billiard rooms close at 12:00 midnight and remain closed until 7:00 a.m. It also prohibits the public use of pool tables and billiard tables located in other businesses during those same hours. Allan is charged with allowing a

"pool room to remain open after stated hours," in violation of the cited town code section, the offense allegedly occurring on or about July 11, 1999.

## I. *Town's Authority to Regulate*

Allan contends that the Town exceeds its police power in regulating his business. As part of this argument, he further contends that while the Town may originally have had reason to regulate pool rooms or billiard rooms, as well as other game rooms, the need for such regulation no longer exists.

I believe that the Town has the authority to regulate pool rooms, billiard rooms, and other game rooms. The Virginia Supreme Court recognized this as a valid exercise of police power over a half century ago, and that is still good law. See *Assaid v. The City of Roanoke*, 179 Va. 47, 18 S.E.2d 287 (1942). The General Assembly has seen fit to place pool rooms under particular scrutiny as well. See Virginia Code §§ 18.2-258, 18.2-258.01, and 40.1-100. The determination as to whether such regulation is still needed falls within the prerogative of the legislative branch. See *Housing Authority v. Denton*, 198 Va. 171, 93 S.E.2d 288 (1956). The proscription intended by the ordinance in the present case is clear and does not vest law enforcement officers with unfettered discretion in enforcing same.

## II. *Public vs. Private*

Allan contends that Breaktime is now a private club not open to the public and thus not subject to the Town ordinance. The Town asserts that Breaktime is a business open to the public operating under the guise of a private club. The Town cites *Brown v. Loudoun Golf and Country Club, Inc.*, 573 F. Supp. 399 (E.D. Va. 1983). This was a civil rights case where the court made a determination that a golf course was a public enterprise rather than a private club and thus subject to the provisions of the federal Civil Rights Act of 1964. Allan argues that the analysis used in civil rights cases is not applicable here.

While I agree that the civil rights cases are not controlling in the present case, I do believe that the analysis used in those cases is helpful in determining whether an entity is public or private. Breaktime requires a nominal membership fee (in effect, an admission fee), is not selective in admitting members, and allows liberal use of the facilities by non-member "guests." The membership has no control over the operation of the facility. Breaktime is operated for the profit of the owner and not necessarily for the good of the membership. It is, in my estimation, a business open to the public, and hence, subject to regulation under the ordinance in question.

### III. *Pool Room vs. Restaurant*

While the name of the business involved here certainly suggests that it is a pool room or billiard room, I recognize that Breaktime offers more than simply the opportunity to "shoot pool." It can be, in some respects, considered a restaurant. For that reason, the Town cannot require the establishment to close at midnight, but the Town can prohibit the use of the pool tables after that hour.

I do find, however, that when the pool tables are being used, Breaktime can be considered a pool room under the town ordinance. For this reason, the evidence sufficiently shows that Allan was operating a pool room after midnight on July 11, 1999.

### IV. *Selective Enforcement*

While this is the first prosecution brought under this ordinance in quite some time, the Defendant has not carried his burden of showing selective enforcement. In this case, the police responded to a citizen's complaint. This was a proper response, even though the citizen was Allan's competitor.

### V. *Conclusion*

I find that the Town ordinance is valid and that Allan, in the operation of Breaktime, is subject to the provisions of the ordinance. I also find that he violated the ordinance by remaining open for the playing of billiards past midnight on July 11, 1999. I find him guilty as charged and impose a fine in the amount of $25.00. He will also pay the costs of the prosecution. He shall pay the fine and costs within thirty days of this date.